UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>CLIFFORD BRODIE<br><br>*Defendant*. | No. 3:17cr171 (MPS) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Defendant Clifford Brodie, who is serving a sentence of imprisonment at FCI Allenwood's medium security facility in Pennsylvania, has filed a motion under the First Step Act of 2018 for a reduction in his term of imprisonment due to the dangers posed by the virus that causes COVID-19. ECF No. 553, 563; Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)). Brodie asserts that his conditions of confinement during the pandemic, his recent contraction of COVID-19 in combination with his underlying asthma, as well as consideration of the sentencing factors constitute extraordinary and compelling reasons to reduce his term of imprisonment. ECF No. 563 at 1. The Government opposes Brodie's motion. ECF Nos. 555, 568. I have carefully considered the memoranda and Brodie's medical records. ECF Nos. 556-1, 566. For the reasons that follow, Brodie's motion is DENIED.

**I.      BACKGROUND**

On August 3, 2017, an indictment was returned charging Brodie with conspiracy to commit acts of racketeering, in violation of 18 U.S.C. §1962(d) (Count One); assault with a dangerous weapon and attempted murder in violation of 18 U.S.C. §1959(a)(3), 1959(a)(5) (Count Three); carrying a firearm during and in relation to a crime of violence/drug trafficking

crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four); using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Six); possession with intent to distribute and distribution of heroin and cocaine base in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 (Count Twelve); and, possession with intent to distribute heroin and marijuana in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), 841(b)(1)(D), and 18 U.S.C. § 2 (Count Thirteen). ECF No. 1.  On July 16, 2019, Brodie pled guilty to the racketeering conspiracy charge, count one of the indictment, and on November 4, 2019, I sentenced him to 168 months of imprisonment and three years of supervised release and dismissed the remaining counts. ECF Nos. 376, 488, 491.

Brodie filed a notice of appeal, ECF No. 495, and the appeal is currently pending before the U.S. Court of Appeals for the Second Circuit. *USA v. Westley (Brodie)*, No. 19-3826 (2d Cir.).  In the meantime, Brodie filed a *pro se* motion for sentence reduction on October 20, 2020 and then renewed that motion with representation by counsel on January 15, 2021. ECF Nos. 553, 563.  The Bureau of Prisons ("BOP") projects that he will be released on July 12, 2029.[1]

## II. DISCUSSION

### A. Jurisdiction

As an initial matter, the Government argues that because Brodie's appeal is pending, this Court no longer has authority to grant the motion for sentence reduction. ECF No. 555 at 6. Indeed, once Brodie filed his appeal, jurisdiction transferred to the Second Circuit and this Court was divested of jurisdiction over issues relating to his sentence, including the length of the term of imprisonment imposed. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers

---

[1] Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited April 5, 2021).

jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") (citation omitted); *see also U.S. v. Ransom*, 866 F.2d 574, 575-76 (2d Cir. 1989) (explaining that although the divesture of jurisdiction "does not preclude a district court, after notice of appeal has been filed, from correcting clerical errors under Fed. R. Crim. P. 36 or from acting to aid the appeal, … [the Second Circuit] ha[s] not relaxed the rule to the point of permitting substantive modifications of judgments.… [T]his approach promotes the orderly conduct of business in both the trial and appellate courts."). This Court, therefore, lacks authority to modify Brodie's judgment by reducing his term of imprisonment.

Nevertheless, under Rule 37 of the Federal Rules of Criminal Procedure, in lieu of reducing Brodie's sentence, I could defer considering the motion, deny the motion, or indicate in my ruling that I would grant the motion upon remand from the Second Circuit. Rule 37 provides in relevant part:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue

Brodie requests that I indicate that I would grant his motion if the Second Circuit remands the matter for that purpose. After considering the parties' arguments and Brodie's medical records, I find that I should deny the motion.

### B. Legal Standards

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court … upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment

> (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Under this section, as modified by the First Step Act of 2018, Pub. L. No.115-391, 132 Stat. 5239, I am free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). In particular, because Brodie—and not the BOP—brings this motion, I am not limited by the Sentencing Commission's policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, which the Second Circuit recognized as applying only to motions for sentence reduction brought by the BOP. *Brooker*, 976 F.3d at 230 ("hold[ing] that Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act . . ."; rather, this Guideline "only [applies] to those motions that the BOP has made" under this Act). However, "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Brooker*, 976 F.3d at 238 (citing 28 U.S.C. § 994(t)) (emphasis in original).

Therefore, I may, in this ruling, indicate that I would reduce Brodie's term of imprisonment after considering the Section 3553(a) factors if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt by the Warden of his facility of his request for a sentence reduction, and (2) I find that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

Brodie has met the exhaustion requirement because the Warden at FCI Allenwood denied

4

his request for release on September 11, 2020. ECF No. 564-1 at 2. As to the merits of Brodie's motion, I find that, when all of the circumstances, including the Section 3553(a) factors, are considered, he has not shown extraordinary and compelling reasons that warrant a reduction of his term of imprisonment.

### C. Brodie's Medical Conditions

Brodie argues that the pandemic poses an "extraordinary" circumstance because while incarcerated, Brodie faces a threat to his health. ECF No. 564 at 11. On January 12, 2021, Brodie received a positive test result for COVID-19, from a test that had been performed the previous day, and was placed in lockdown. ECF No. 566 at 94, ECF No. 564 at 11. The Government has submitted medical records from the BOP demonstrating that although Brodie tested positive for COVID-19, he has, fortunately, remained asymptomatic. Specifically, the Government submitted examination reports from January 14, 15, 18, 19, and 20, 2021, in which the BOP screened Brodie for COVID-19 symptoms. ECF No. 569-2. None of the reports indicate that he experienced symptoms related to COVID-19. Rather, they indicated that he was *not* experiencing fever, cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, or nausea or vomiting. The January 18, report states, "Patient interviewed at cell and denies medical concerns at this time. Reports feeling well without cough, shortness of breath, or general malaise. [Inmate] completed at least 10 days of contact isolation following a positive COVID-19 test and is asymptomatic. Remove from contact isolation." *Id.* at 3. It appears from the medical reports that FCI Allenwood monitored Brodie's condition once he tested positive and took steps to prevent further spread of the virus within the facility by placing Brodie in isolation. It also appears that Brodie weathered the disease and recovered without symptoms—all encouraging signs. Since Brodie remained asymptomatic, I do not find that his

positive test result in and of itself amounts to an extraordinary or compelling reason to grant sentence reduction. *See United States v. Campbell*, 6:06-CR-06105 (EAW), 2021 WL 27309, at *2 (W.D.N.Y. Jan. 5, 2021) ("[T]he Court finds that Campbell's new evidence—that he tested positive for the virus causing COVID-19 approximately one month ago—does not change the Court's prior calculus that Campbell has failed to establish extraordinary and compelling reasons for a sentence reduction and he has failed to meet his burden to show that a sentence reduction is warranted in view of the factors set forth at 18 U.S.C. § 3553(a).").

Brodie also argues that the possibility of reinfection presents an extraordinary and compelling circumstance warranting sentence reduction. ECF No. 564 at 13.  While it is true that there is some evidence that one can become reinfected with COVID-19, the Center for Disease Control ("CDC") reports that such cases "remain rare" and that it is still studying the issue.[2]  As such, the rare possibility of reinfection does not present an extraordinary or compelling circumstance warranting sentence reduction. *See United States v. Davis*, 12-CR-712 (SHS), 2020 WL 3790562, at *3 (S.D.N.Y. July 7, 2020) ("Although the Court understands Davis's concerns of reinfection, it cannot conclude that this risk is an extraordinary and compelling reason for a significant sentence reduction.").

Brodie also claims that his underlying asthma and history of smoking place him in a category at serious risk from COVID-19 and warrant a reduction in his term of imprisonment. ECF No. 564 at 14.  The CDC lists "moderate-to-severe" asthma as a factor that "can make you more likely to get severely ill from COVID-19."[3]  Moderate asthma is defined by the Mayo

---

[2] *See* Centers for Disease Control and Prevention, *Reinfection with COVID-19,*
https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited April 12,2021).

[3] *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions,*
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 12, 2021).

6

Clinic as "[s]ymptoms once a day and more than one night a week" and severe persistent asthma is defined as "[s]ymptoms throughout the day on most days and frequently at night."[4]

Brodie is twenty-four years old and claims to "ha[ve] suffered from asthma since childhood." *Id.* Brodie's asthma, however, does not appear to be "moderate-to-severe"; at most, Brodie's medical records indicate that he suffers from mild intermittent asthma – defined as "[m]ild symptoms up to two days a week and up to two nights a month."[5] For example, a BOP physical evaluation from February 12, 2020 describes Brodie as having "Intermittent Asthma" and states that Brodie was prescribed an inhaler and was instructed that it should not be used "daily" but rather, "as needed to prevent/relieve asthma attack." ECF No. 556-1 at 6, 8; *cf id.* at 21 ("Don't use daily, Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack...."). Another BOP medical report from November 25, 2019 states that Brodie was diagnosed with asthma "as a child. Last asthma attack 10 years ago[,]" *id.* at 24, and still another states that Brodie only used his inhaler once "last year." *Id.* at 36. Brodie himself reported, in anticipation of sentencing, that he "has never been hospitalized or suffered from any significant illness or disease. He advised that he has had asthma and seasonal allergies in the past. He is not taking any prescribed medication." ECF No. 451 at 29. These reports suggest that Brodie's asthma does not fall within the "moderate-to-severe" classification because there is no evidence that Brodie had symptoms "once a day" (moderate) or "throughout the day on most days" (severe).

In the cases cited by Brodie in which sentence reductions were granted, the asthma presented as more severe than Brodie's, and was often exacerbated by other respiratory ailments

---

[4] *See* Mayo Clinic, *Asthma Diagnosis,* https://www.mayoclinic.org/diseases-conditions/asthma/diagnosis-treatment/drc-20369660 (last visited April 12, 2021).
[5] *See* Mayo Clinic, *Asthma Diagnosis,* https://www.mayoclinic.org/diseases-conditions/asthma/diagnosis-treatment/drc-20369660 (last visited April 12, 2021).

7

or medical problems. *See, e.g., United States v. Cooper*, 13-CR-66 (JPO), 2020 WL 4195273, *2 (S.D.N.Y. June 11, 2020) ("Defendant suffers from asthma, a condition he has had since childhood.  He has a prior history of hospitalizations for pneumonia and bronchitis.  He has been prescribed an inhaler, which he has been using multiple times a day."); *United States v. Echevarria*, 17-CR-44 (MPS), 2020 WL 2113604, *2 (D. Conn. May 4, 2020) (noting a history of bronchial asthma, use of an inhaler, and treatment by the BOP for asthma, shortness of breath, and other chronic medical problems over the prior months); *United States v. Gileno*, 455 F. Supp. 3d 1, 6 (D. Conn. 2020) (where defendant submitted evidence that he suffered from chronic asthma, had multiple bouts of pneumonia as an adult, and was taking medication for "hyperactive airway disease," court stated: "As explained above and set forth in his motion, Mr. Gileno has demonstrated that he suffers from asthma and respiratory conditions that place him at greater risk from COVID-19….").  I do not find Brodie's asthma to present as severe a medical condition in comparison, nor is there a history of other respiratory ailments or medical problems within Brodie's BOP records.

Brodie also argues that his history of smoking is another risk factor that makes him susceptible to severe illness from COVID-19. ECF No. 564 at 18.  According to the CDC, cigarette smoking can make an individual more likely to get severely ill from COVID-19.[6] Brodie's medical records reflect a history of smoking cigarettes—roughly half a pack of cigarettes per day for five years, ECF No. 566 at 25, as well as marijuana—daily. *Id.* at 73. Fortunately, however, Brodie has not become severely ill from COVID-19 after becoming infected.

---

[6] *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 13, 2021).

In any event, even if Brodie's intermittent asthma and history of smoking place him at a higher risk of becoming seriously ill should he be reinfected with COVID-19, when I take into account the Section 3553(a) factors, as I must under Section 3582(c)(1)(A), I find that those risk factors are insufficient to warrant a sentence reduction.

### D. The Section 3553(a) Factors

Section 3553(a) provides, among other things, that the sentence imposed should reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed medical care in the most effective manner. *See* 18 U.S.C. 3553(a)(2)(A-D). I find that the seriousness of Brodie's offense, the amount of time that remains on the sentence imposed, and the need to protect the public, including the victims in this case, weigh heavily against reducing Brodie's sentence, even when his medical risk factors are considered.

During Brodie's sentencing, I explained that Brodie had committed attempted murder and aggravated assaults, and was, under all the circumstances, the most culpable member of a dangerous street gang that was involved in a wave of shootings in New Haven. ECF No. 524 at 20, 25, 39, 66. I also considered the victims of Brodie's crimes, one of whom suffered serious and permanent damage from being shot in the stomach and head at Brodie's instigation after he and the victim had had a "beef." *Id.* at 20, 64, 66. To reflect the seriousness of Brodie's crimes and protect the public, I imposed a substantial upward variance from the Guidelines range. *See* id at 67. ("Because these [i.e., various other shootings] are not included in the guidelines range, I find that a substantial upward variance is warranted in this case.").[7] More specifically, I found

---

[7] Although the judgment refers to "a substantial upward departure," ECF No. 491 at 1, it should have referred to a substantial upward variance, as I indicated during the sentencing. *See United States v. DeMartino*, 112 F.3d 75, 78 (2d Cir. 1997) ("[I]f there is a variance between the oral pronouncement of sentence and the written judgment of conviction, the oral sentence generally controls.").

that a sentence within the Guidelines range would not have adequately served these and other purposes of sentencing because the Guidelines range did not take account of other aggravated assaults either committed by the defendant or in which he participated, two of which resulted in serious injuries to others. *Id.*; *see also* ECF No. 491 at 1.

Reducing Brodie's sentencing to time served would unduly depreciate the seriousness of his very serious offense, especially given that he has served a relatively small portion of the sentence. *See United States v. Cummings*, No. 12-CR-31 (VM), 2021 WL 354957, *2 (S.D.N.Y. Feb. 2, 2021) ("Given the seriousness of his offenses, and that he has served a relatively small fraction of his sentence, a sentence reduction would be inappropriate at this time."). The fact that Brodie has served less than 4 years of a 14-year sentence "counsel[s] against release so soon …." *United States v. Washington*, No. 14-CR-215, 2020 WL 1969301, *5 (W.D.N.Y. April 24, 2020) (denying sentence reduction for defendant who had "served only a very small portion of his sentence—18 months of his 121-month sentence").

Reducing the sentence to time served would also put the public at risk. Specifically, the victim with whom Brodie had a "beef" and who was nearly killed testified at a *Fatico* hearing in this case. That victim decided against attending the sentencing, expressing fear for his life and for the safety of his children as a result of having testified at the *Fatico* hearing. ECF No. 524 at 8-9. Indeed, the racketeering conspiracy in which Brodie was involved was especially hostile to those it perceived to be "snitches." Brodie's release less than two years after sentence was imposed might place at risk the victim who testified at the *Fatico* hearing.

Brodie argues that his young age when he committed the crimes and an evolving scientific understanding of youth and crime support a finding of extraordinary and compelling circumstances warranting a sentence reduction. ECF No. 564 at 21. It is true that Brodie was

10

only nineteen when, for example, the above-mentioned victim was shot, and his immaturity was on full display in his social media posts boasting and celebrating the violent exploits of his gang. *Id.* at 38, 64. It is also true, however, that I explicitly considered Brodie's age when I determined what sentence would be appropriate. I explained during Brodie's sentencing that I would have imposed a longer term of imprisonment had it not been for his age. *Id.* at 65. I took full account of his youth when I sentenced him.

Brodie also requests a reduction in his sentence short of a reduction to time served. I decline this invitation. The original sentence I imposed was the lowest I found that was consistent with the purposes of sentencing. ECF No. 524 at 68-69. For that reason, and because, when the record is considered as a whole, Brodie has not demonstrated extraordinary or compelling reasons, even a modest reduction in his term of imprisonment is not warranted here. Although time served during the pandemic is harsher due to reduced BOP programming and lockdowns, I am not persuaded that that circumstance warrants a reduction in Brodie's sentence, in light of the seriousness of his conduct and the need to protect the public.

I commend Brodie for remaining discipline free since entering BOP custody, ECF No. 553 at 28, and I take that to be a sign that he is maturing and beginning genuinely to take responsibility for his actions, something he did not do adequately at his sentencing. *See* ECF No. 524 at 62 (explaining that Brodie's statement at sentencing was "full of excuses."). I also encourage Brodie to continue to take advantage of the programming available at the BOP, and to get vaccinated as soon as possible, if he has not done so already. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (advising "you should be vaccinated regardless of whether you already had COVID-19"). Under all the circumstances,

including that Brodie appears to be asymptomatic after becoming infected with COVID-19, as well as the Section 3553(a) factors, I deny Brodie's motion for sentence reduction.

### III.    CONCLUSION

For the foregoing reasons, Brodie's motion to reduce sentence (ECF Nos. 553, 563) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            April 14, 2021